ACCEPTED
04-14-00716-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/6/2015 6:30:25 PM
KEITH HOTTLE
CLERK

IN THE COURT OF APPEALS
FOURTH SUPREME JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

2/6/2015 6:30:25 PM

KEITH E. HOTTLE
Clerk

## NO. 04-14-00716- CR

**FRANCISCO JAVIER AZUARA, JR.,**
Appellant

v.

**THE STATE OF TEXAS**,
Appellee

APPEALED FROM 111TH JUDICIAL DISTRICT COURT
WEBB COUNTY TEXAS
CAUSE NO. 2014-CRM-389-D2
Honorable Monica Z. Notzon, Judge Presiding

### *AMENDED BRIEF FOR APPELLANT*

ORAL ARGUMENT REQUESTED

**OSCAR A. VELA, JR.**
**OSCAR A. VELA, JR., P.C.**
1004 E. Hillside Rd., Ste. B
Telephone: (956) 568-0221
Facsimile: (956) 568-0052
State Bar No.: 24004967

Attorney for Appellant

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to the provisions of Rule 38.21(a), Texas Rules of Appellate Procedure, a complete list of the names of all parties to this action and counsel are as follows:

| | |
|---|---|
| **Appellant**: | Francisco Javier Azuara |
| **Attorney for Appellant At Trial:** | Nathen Chu<br>5517 McPherson Rd., Ste. 14<br>Laredo, Texas 78041 |
| **Attorneys for Appellant On Appeal:** | Oscar A. Vela, Jr.<br>1004 E. Hillside Rd., Ste. B<br>Laredo, Texas 78041 |
| **Attorney for State**: | Isidro R. Alaniz<br>Webb County District Attorney<br>1110 Victoria St., Suite 401<br>Laredo, Texas 78040 |
| **Trial Court**: | Honorable Monica Z. Notzon<br>District Court Judge<br>111th District Court<br>Webb County, Texas |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................... ii

TABLE OF CONTENTS.................................................................................. iii

INDEX OF AUTHORITIES.............................................................................v

STATEMENT OF THE CASE...........................................................................1

ISSUES PRESENTED......................................................................................2

STATEMENT OF FACTS ................................................................................3

SUMMARY OF THE ARGUMENT .................................................................7

ARGUMENT

    I. <u>Issue One</u>: The evidence is factually and legally insufficient to prove that Appellant committed the offense of aggravated assault with a deadly weapon "as a party by aiding" the shooting of each individual identified in Counts 1-7 of the Indictment or that he acted as a principal to such an offense. ........10

    II. <u>Issue Two</u>: The trial court erred by submitting an erroneous and defective jury charge on the law of parties without naming the principal, without providing guidance to the Jury in the application paragraph as to the law of parties, and without identifying the "aiding" conduct of Appellant………..26

    III. <u>Issue Three</u>: The trial court abused its discretion and erred in admitting hearsay testimony in violation of Rule 801(d) and Rule 802 of the Texas Rules of Evidence in violation of Appellant's substantial rights………… 32

CONCLUSION .................................................................................................38

CERTIFICATE OF SERVICE ........................................................................39

# INDEX OF AUTHORITIES

**CASES**                                                                                       **PAGE**

## United States Supreme Court Decisions

*Draper v. United States*, 358 U.S. 307 (1959)........................................................11

*Jackson v. Virgina*, 443 U.S. 307 (1979)................................................................10

*Jacobellis v. Ohio*, 378 U.S. 184 (1964)................................................................10

## United States Courts of Appeals Decisions

*Clark v. Procunier*, 755 F.2d 394 (5th Cir.1985) .....................................................11

*United States v. D'Amato*, 39 F.3d 1249 (2nd Cir. 1994) .......................................11

*United States v. Moreno*, 185 F.3d 465 (5th Cir.1999),
*cert denied*, 528 U.S. 1095 (2000).........................................................................11

## State of Texas Decisions

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985)…………………………. 27

*Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex.Crim.App.2005)………………… 36

*Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App.2010) .........................................10

*Calvert v. Union Producing Co.*, 402 S.W.2d 221
(Tex.Civ.App.—Austin 1996, *writ ref'd n.r.e.*).........................................................11

*Chatman v. State*, 846 S.W.2d 329 (Tex.Crim.App.1993)……………………….30, 31

*Ervin v. State*, 333 S.W.3d 187
(Tex.App.—Houston [1st Dist.] 2010, pet ref'd) ....................................................24

*Evans v. State,* 480 S.W.2d 387 (Tex.Crim.App.1972)………………………….. 35

*Fowler v. State*, 379 S.W.2d 345 (Tex.Crim.App.1964)……………………………..35

*Gabriel v. State*, 973 S.W.2d 715 (Tex.App.-Waco 1998, no pet.)……………… 32

*Glover v. State*, 102 S.W.3d 754 (Tex.App.-Texarkana 2002, pet. ref'd)............ 35

*Gross v. State*, 380 S.W.3d 181 (Tex.Crim.App. 2012)…………………………… 20

*Hughes v. State*, 128 S.W.3d 247 (Tex.App.-Tyler, 2003)……………………… 35

*Johnson v. State*, 739 S.W.2d 299 (Tex.Crim.App.1987)……………………….. 31

*Johnson v. State*, 967 S.W.2d 410 (Tex.Crim.App.1998)………………………. 37

*Jones v. State*, 111 S.W.3d 600 (Tex.Crim.App. 2003)………………………… 32

*King v. State*, 953 S.W.2d 266 (Tex.Crim.App.1997)………………………….. 32

*Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App.1997)………………………….. 30

*Marvis v. State*, 36 S.W.3d 878 (Tex.Crim.App.2001)………………………….. 31

*Mize v. State*, 922 S.W.2d 175 (Tex.Crim.App.1996)...........................................22

*Motilla v. State*, 78 S.W.3d 352 (Tex.Crim.App. 2002)………………………… 32

*Monroe v. State*, 81 S.W. 726 (App.1904)………………………………………… 19

*Ngo v. State*, 175 S.W.3d 738, 744 (Tex.Crim.App.2005)…………………….26, 27

*Oaks v. State*, 642 S.W.2d 174 (Tex.Crim. App.1982) ...................................19, 22

*Pesina v. State*, 949 S.W.2d 374 (Tex.App.-San Antonio 1997)…………………18

*Plata v. State*, 926 S.W.2d 300 (Tex.Crim.App.1996)…………………………... 30

*Ricondo v. State*, 475 S.W.2d 793 (Tex.Crim.App.1971)……………………….. 35

*Rhyne v. State*, 620 S.W.2d 599 (Tex. Crim. App. 1981)......................................22

*Salazar v. State*, 38 S.W.3d 141 (Tex.Crim.App.2001)……………………………..35

*Schaffer v. State,* 777 S.W.2d 111 (Tex.Crim.App.1989)……………………… 34

*Solomon v. State*, 49 S.W.3d 356 (Tex.Crim.App.2001)……………………. 33

*Texas Employer's Ins. Ass'n v. Goad*, 622 S.W.2d 477
(Tex. App.—Tyler 1981, *no writ)*......................................................................11

*Valdez v. State,* 92 S.W.3d 911……………………………………………….. 19

*Vasquez v. State,* 389 S.W.3d 361 (Tex.Crim.App. 2012) …………….. 28, 29, 30

*Weaver v. State*, 96 Tex. Crim. 506, 258 S.W. 171 (1924) ....................................11

*Williams v. State*, 410 S.W.3d 411 (Tex.App.-Texarkana 2013)………... 12, 19, 21

*Wooden v., State*, 101 S.W.3d 542
        (Tex.App.-Fort Worth 2013, pet. ref'd.) …………………….20, 2, 23, 24, 25

## STATUTES AND RULES                                          PAGE

Tex. Code Crim. P. art. 36.13………………………………………………12, 19

Tex. Penal Code Ann. § 7.02 ...........................................................................19, 25

Tex. Penal Code Ann. § 22.01 .........................................................................12, 23

Tex. Penal Code Ann. § 22.02 .........................................................................12, 25

Tex. R. App. P. 33.1(a)………………………………………………………….32

Tex. R. App. P. 44.2………………………………………………………………32

Tex. R. Evid. 801(d)…………………………………………………………32, 33

Tex. R. Evid. 802………………………………………………………………32, 33

Tex. R. Evid. 803(2)………………………………………………………….. 35

**CONSTITUTIONAL PROVISIONS** <span style="float:right">**PAGE**</span>

Fifth Amendment, United States Constitution………………………………………31

Sixth Amendment, United States Constitution …………………………............31

Fourteenth Amendment, United States Constitution …………………………….31

## STATEMENT OF THE CASE

On April 29, 2014, appellant pled not guilty to the offense of aggravated assault with a deadly weapon. [CR1:22] [RR9:153].[1]  After a jury trial, Appellant was found guilty of aggravated assault with a deadly weapon "as a party by aiding." [CR1:419-431, 432-436]. On July 28, 2014, Appellant was sentenced to 14 years and 6 months confinement in the Texas Department of Criminal Justice, Institutional Division and a $2,500.00 fine per count of conviction. [CR1:454-456, 476].

On October 6, 2014, Appellant's motion for new trial was denied by the trial court. [RR18:56].  On October 10, 2014, Appellant perfected this appeal by filing his Notice of Appeal. [ CR1:622-623].

---

[1] Appellant uses the following citations: Clerk's Record will be cited as [CR#:#], where CR refers to Clerk's record, followed by volume number and the page number; Reporter's Record will be cited as [RR#:#], Where RR refers to the reporter's record, followed by the volume number and the page number; States Exhibit [SX#]; and Defendant's Exhibit [DX#].

## ISSUES PRESENTED

### I.

The evidence is factually and legally insufficient to prove that Appellant committed the offense of aggravated assault with a deadly weapon "as a party by aiding" the shooting of each individual identified in Counts 1 – 7 of the Indictment or that he acted as a principal to such an offense.

### II.

The trial court erred by submitting an erroneous and defective jury charge on the law of parties without naming the principal, without providing guidance to the Jury in the application paragraph as to the law of parties, and without identifying the "aiding" conduct of Appellant.

### III.

The trial court abused its discretion and erred in admitting hearsay testimony in violation of Rule 801(d) and Rule 802 of the Texas Rules of Evidence in violation of Appellant's substantial rights.

## STATEMENT OF FACTS

On July 7, 2013, a shooting occurred outside D.J.'s Republic night club (herein after the "Club") located in Laredo, Texas. [RR9:153]. As a result of the shooting, a total of Seven (7) individuals were injured by gun shots fired into a crowd gathered outside the front entrance of the night club. [RR9:153].

According to the facts of the case on July 7, 2013, at approximately 1:38 AM, Alfonso Carlos Tamez (herein after "Tamez"), Francisco Javier Azuara (herein after "Azuara" and/or "Appellant"), and Jessica Ortega (herein after "Ortega") (sometime collectively referred to as the "Parties") arrived together to the Club in a white H2 Hummer (herein after "Hummer"). [RR11:198, 205, 209]. Appellant drove the Hummer to the Club and parked along the west side of the Club on the sidewalk near the patio area. [RR10:206]; [RR11:205, 209, 218]. Upon parking the Hummer, the parties walked into the night club at 1:39 AM. [RR11:198]. As the Parties walked through the Club, a bottle was thrown at Ortega. [RR9:154]. As Ortega, Azuara and Tamez looked for the person responsible for throwing the bottle, another beer bottle hit Tamez on the head. [RR9:184]; [RR10:149]. Shortly, thereafter, a fight broke out and Tamez, Azuara and Ortega were escorted out of the Club. [RR11:73]. Azuara was not alleged to have been involved in the fight. [RR9: 196]. A total of three minutes elapsed between the time the Parties entered the Club and the time they were escorted out.

3

[RR11: 198]. During the same three minutes, several other fights broke out and various other patrons were also being escorted out of the Club. [RR9:184].

Once outside the Club, several other fights broke out outside of the Club and it was utter chaos. [RR9:187,189]; [RR10:150-151]. One of these fights occurred "right by Molly Street" on the west side of the club. [RR10:151]. Punches were being thrown by everyone and there were 10 to 15 people involved in the fight. [RR10:241] [RR11:83]. However, the Parties were not involved in any of the fights that took place outside the Club. [RR10:149]. At approximately 1:46 AM, three (3) minutes after the Parties had been escorted out of the Club, shots rang out and 7 people were injured. [RR11: 200]. 911 dispatchers received their first call at 1:51 AM. [RR9:174]. The gun shots allegedly came from the direction of Molly Street which was located to the west of the Club and directly adjacent to the patio area of the Club. [RR10:20, 93, 95, 104]; [SX108]. Several witnesses claimed the shots came from an area to the west of the club near a parking lot across the street (Molly Street) from the night club. [RR10:93, 95, 104]; [SX167]. Witnesses also claimed the shots came from a dark SUV driving south on Molly street. [RR10:93, 95, 104]; RR11:16, 76-77, 87]. Additionally, several vehicles were identified as being near the area where the shots were alleged to have originated. [RR10:45]. Witnesses identified a red dodge pickup, a white SUV, a dark colored SUV, and a yellow mustang. [RR9:157]; [RR10:45, 241]; [RR11:76-77, 181-182]; [SX3]. No

4

witnesses could identify the shooter, no witness saw a weapon, and no witness positively identified any action committed by the Appellant.

That same night at approximately 2:00 AM, a witness called Tamez to inquire whether he was involved in the shooting. [RR10:80, 120]. Tamez denied involvement and told the witness and officers that he wanted no problems and wanted to clear his name. [RR10:121-123]. After this phone call, Tamez, Ortega, and Appellant drove back to the club and met with law enforcement for over 6 hours to discuss the events that took place on the night of the shooting. [RR11:179-180]. Appellant and the co-defendants drove back to the Club less than 1 hour from the time they had left the Club. [RR10: 120]. Appellant drove the Hummer back to the Club and once they arrived, they all fully co-operated with law enforcement officials. [RR10:76-77]. Appellant and the co-defendants were padded down, searched and placed in separate patrol units for further investigation. [RR10:76]. Appellant was cooperative, normal in disposition, and normal in temperament. [RR10:108]. Appellant gave consent to search the Hummer and a search was performed. [RR10:76-77, 107-108]. No weapons or other evidence was found inside the Hummer or on the person of Appellant. [RR10:79]. Appellant and the co-defendants submitted to questioning without counsel, they submitted to a gun residue testing, they allowed law enforcement to inspect and search the Hummer, and they allowed law enforcement to search their homes. [RR: 11: 51-57,

179-193, 201-204, 247]. Additionally, Appellant and the co-defendant allowed law enforcement to conduct a finger print analysis and gun residue test on the Hummer. [RR11:136, 145]. At no time did Appellant or any of the co-defendants admit to participating in the shooting made the basis of the indictment. At no time after the shooting did anyone claim that Appellant was the shooter or a participant in the shooting. See [RR9, 10, 11, 12].

Appellant, Tamez, and Ortega were subsequently detained and transported to the Laredo Police Department. [RR11:193]. Appellant was interviewed regarding this incident. [RR11:193, 205-207] [SX165]. The interrogation lasted about an hour and the interrogation revealed that Appellant was unaware that someone had been shot or that he participated in the shooting. [RR11: 205-207]. After the interrogation, Appellant gave investigators consent to search his home and nothing was found. [RR11:51]. Appellant was subsequently allowed to return home and he was not arrested.

On March 26, 2014, a grand jury returned an indictment against all three defendants. [CR1: 53]. Appellant was charged with aggravated assault with a deadly weapon as a principal and as a party and was subsequently arrested. [CR1:47-53].

## SUMMARY OF THE ARGUMENT

This is a case of insufficient evidence. There is insufficient evidence in the record to support a finding by the jury that the Appellant committed the act of aggravated assault with a deadly weapon as a principal, and there is insufficient evidence to find that Appellant used or knew that a gun was being used during the commission of this offense. The record is also absent of evidence showing that Appellant was aware a weapon was being possessed by any person in the vehicle that he occupied or that any person would use a weapon during any alleged assault. The record is further absent of evidence showing that Appellant was aware a weapon was going to be used by any person in the vehicle he occupied.

Additionally, there is insufficient evidence to support a conviction of aggravated assault with a deadly weapon under a party liability theory. Under the Texas law of parties, a person is criminally responsible for the acts of others when that person acts with the intent to promote or assist the commission of the offense, and solicits, encourages, aid, or attempts to aid the other person to commit the offense. Tex. Pen. Code § 7.02. The record contains no indication that Appellant knew the offense was occurring or was going to occur therefore negating the intent element required to support the conviction of the offense. Although Appellant was alleged to have been an occupant of the Hummer as it drove away from the Club, Appellant did not have the requisite intent to be found criminally responsible for

7

any of his co-defendants' actions and there was no evidence that any of his co-defendants committed any crime. In fact, his co-defendant Ortega was acquitted on all counts. Additionally, no one could identify the shooter in the case and neither co-defendant Tamez or Ortega were alleged to have possessed a gun, used a gun, or shot any of the victims named in Count 1-7 of the amended indictment.

Contrary to the conviction, there was no evidence that Appellant or his co-defendants were involved in the shooting made the basis of the indictment. In fact, originally during opening statements the State claimed that Appellant was alleged to have been an occupant of the Hummer as the Parties left the Club and that an occupant of the Hummer shot the victims named in the indictment. But as the trial progressed, the State's theory fell apart. At closing, the State abandoned their original theory and now claimed that Appellant occupied a different vehicle and was in fact the shooter. However, the record was devoid of any evidence that showed Appellant was the shooter and there was no evidence that Appellant aided a third party in any way. Additionally, had no motive or reason to commit the crime of aggravated assault with a deadly weapon and he did not have any motive to shoot anyone. Further, Appellant was not aware that a shooting was going to take place, that a shooting took place, or that a weapon was present in the vehicle he occupied. Additionally, there was no evidence that Appellant aided anyone in any fashion as required for a conviction under the law of parties alleged by the

8

State. In essence, this was a mere presence case and mere presence at the scene of a crime is no evidence of guilt. As such, there is legally insufficient evidence to support a conviction of Appellant as either a principal or under a party liability theory.

Further, the Court committed error in the jury charge by instructed the jury that it could find Appellant guilty under the law of parties. The charge failed to identify the responsible third party, it did not refer the jury back to the abstract portion of the jury charge on the law of parties, and it failed to identify how the Appellant aided any principal. As stated above, at closing the State changed its theory and claimed Appellant was the shooter. However, the State was mistaken and misstated the testimony of one witness who specifically testified that Appellant had not shot her. Therefore, even the State was confused as to the theory of their case and there representations doom the conviction in this case.

Lastly, the trial court impermissible allowed the introduction of hearsay testimony that affected the Appellant's substantial rights.

**I.      The evidence is legally insufficient to prove that Appellant committed the offense of aggravated assault with a deadly weapon by shooting the victims identified in the indictment or that he acted as a party to such offenses.**

**A.      Standard of Review**

The sole standard of review an appellate court should apply when determining legal sufficiency of evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App.2010).

In *Jackson v. Virginia*, the Supreme Court held that its previous "no evidence" test was "simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt" because "'[a] mere modicum of evidence may satisfy a 'no evidence' standard.'" *Jackson v. Virginia*, 443, U.S. at 320, quoting *Jacobellis v. Ohio*, 378 U.S. 184, 202 (1964) (Warren, C.J., dissenting)).[2]     The question, then, is whether the evidence in this case is genuinely legally sufficient, not whether there is some proof from which a conclusion of guilt could be drawn.    If the evidence "gives equal or nearly equal circumstantial

---

[2] A "mere modicum" of evidence was said to "include "any evidence that is relevant—that has any tendency to make the existence of a crime slightly more probably that it would be without evidence. *Id.*

10

support to a theory of guilt and a theory of innocent of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir.1985); *Weaver v. State*, 96 Tex.Crim. 506, 258 S.W. 171 (1924); *Texas Employer's Ins. Ass'n v. Goad*, 622 S.W.2d 477, 480 (Tex App.— Tyler 1981, *no writ*); *Calvert v. Union Producing Co.*, 402 S.W.2d 221, 227 (Tex.Civ.App.—Austin 1996, *writ ref'd n.r.e.*); *See also United States v. Moreno*, 185 F.3d 465, 471 (5th Cir.1999), *cert denied*, 528 U.S. 1095 (2000) ("While the jury is free to choose among reasonable construction of the evidence, a verdict cannot be affirmed if it is based on circumstantial evidence that is as consistent with innocence as it is with guilt."); *United States v. D'Amato*, 39 F.3d 1249, 1256 (2nd Cir. 1994) (evidence "at least as consistent with innocence as with guilt" insufficient to support a guilty verdict) (internal question marks omitted). *See also Draper v. United States*, 358 U.S. 307, 323-4 (1959) (Douglas, J., dissenting) ("The law goes far to protect the citizen. Even suspicious acts observed by…officers may be as consistent with innocence as with guilt. That is not enough, for even the guilty may not be implicated on suspicion alone.")

**B.     Principal liability**

Although the state abandoned their principal theory of liability by submitting a jury charge which allowed a conviction against Appellant only under a party theory of liability, Appellant addresses principal liability in abundance of caution.

11

[CR1:419-431]. Although Appellant addresses the principal liability theory, Appellant claims the Jury could not have convicted him as a principal in that the jury charge permitted a conviction only under the law of parties as an aider. See Tex. Code Crim. P. art. 36.13 (the jury is governed by the law it receives form the Court); see also *Williams v. State*, 410 S.W.3d 411 (Tex.App.-Texarkana 2013) (the jury is bound by the law it receives from the court).

The offense of aggravated assault with a deadly weapon requires that a person intentionally or knowingly commit the offense of assault as defined in Section 22.01 of the Texas Penal Code and that the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of an assault. Tex. Pen. Code §22.02 (a)(1), (2). Section 22.01 of the Texas Penal Code provides that a person commits an assault when a person (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

In this case, Appellant did not assault anyone nor did he use or exhibit a deadly weapon (a firearm) during the commission of any assault. See [RR9,10,11,

12

12]. Furthermore, the jury could not have found Appellant responsible as principal because the Court instructed the jury only under a party theory of liability, namely "a party by aiding". See [CR1:419-432].

After leaving the night club, there was no evidence that Appellant assaulted anyone nor is there evidence that Appellant used or exhibited a deadly weapon either individually or by aiding in the shooting of any of the victims in Counts 1-7 of the indictment. During the trial, a total of 29 witnesses testified for the state and not one witness identified Appellant as the shooter, nor did any witness identify Appellant as using or exhibiting a deadly weapon during the shooting that occurred on July 7, 2013. [RR9, 10, 11, 12]. The closest the State came to an identification of Azuara as a principal was when a witness testified that a person who may have exited a vehicle involved in the shooting resembled Azuara. In fact, the State used Angel Cruz-Avitu's testimony during closing arguments to claim that Appellant was the shooter, but they were mistaken. [RR12:35].

During his direct examination, Angel Cruz Avitu stated that he heard a screeching sound, he saw a dark colored Expedition pull up, the passenger door then opened, a person got out of the vehicle with a dark colored shirt wrapped around his hand. Cruz-Avitu then stated that he turned around and then heard shots fired. [RR11:76-78]. When asked by the prosecution what this person looked like, Cruz-Avitu stated: "The person that I had described – I had said it was

13

a Hispanic male. He was about, I believe, like kind of my height. He had a goatee, mostly describing the gentleman right here." [RR11:78]. Cruz-Avito then pointed to Azuara and stated the person he was describing resembled Azuara. [RR11:78]. The state then ran with this statement and asked Cruz-Avitu: "And is that the same Expedition that we're talking about where you saw Mr. Azuara stepping out? Yes, sir." However, Cruz-Avitu never stated that he saw Azuara stepping out of the Expedition. [RR11:76-85]. Additionally, Cruz-Avitu responded "yes" in response to the question if it was the same Expedition.

The Defense clarified this point on cross examination when Mr. Amaya asked Cruz-Avitu the following:

Mr. Amaya:      Okay. And are you sure it's the gentleman that's sitting here that you saw, or you're just saying that he looks like him?

Cruz-Avitu:      I'm just saying he looked like him.

Mr. Amaya:      And I want to get this right so that the Jury understands. You are saying a Hispanic male about 5'9?

Cruz-Avitu:      Yes.

Mr. Amaya:      But you're not saying it's this gentleman?

Cruz-Avitu:      No.

[RR11:82].

Mr. Amaya went on and asked Cruz-Avitu about the person he claimed exited the Expedition. Mr. Amaya asked the following:

14

| Mr. Amaya: | Tell me if I get this wrong. He stops, the passenger door opens, correct? |
|---|---|
| Cruz-Avitu: | Yes. |
| Mr. Amaya: | A person gets up? |
| Cruz-Avitu: | Yes. |
| Mr. Amaya: | He had a gun? Did you see the gun? |
| Cruz-Avitu: | No, sir. |
| | … |
| Mr. Amaya: | You never saw a gun flash? |
| Cruz-Avitu: | No. Not until I was hit already on the floor. |
| Mr. Amaya: | Okay. Then you turned around, correct? |
| Cruz-Avitu: | Uh-huh. |

[RR11:84-85].

The Defense further asked Cruz-Avitu whether he saw any person shoot at him. Mr. Chu asked the following:

| Mr. Chu: | So you're saying that somebody got out right here? |
|---|---|
| Cruz-Avitu: | Yes, sir. |
| Mr. Chu: | And was firing at you? |
| Cruz-Avitu: | No, sir. |
| Mr. Chu: | No? |

15

Cruz-Avitu:     No. I didn't say they fired. I said they had gotten off the vehicle.

Mr. Chu:        Okay. But you're not telling us or the Jury that that person that got out fire a weapon?

Cruz-Avitu:     Yes, sir. I'm not saying that.

Mr. Chu:        You don't know who fired the weapon?

Cruz-Avitu:     No, sir. I don't.

As for Cruz-Avitu's statement that the person who exited the dark expedition had a "goatee," the Defense showed the Jury in SX163 (video file 0179) that neither Azuara nor Tamez had a "goatee" on the night of the shooting. [RR12:56]. This video was taken by surveillance cameras located at the front entrance of the Club which captured Tamez, Azuara and Ortega as they entered the Club. Therefore, not only did Cruz-Avitu's own testimony eliminate Azuara as the occupant of the dark expedition, but so did the video surveillance taken at the Club because Azuara did not have a "goatee." [SX163, video file 0179]. In essence at the end of the State's case, there was no testimony that Azuara participated in the shooting in any manner.

As for the co-defendants, while several witnesses testified they thought co-defendant Tamez was involved in the shooting, no witness testified that Tamez was in fact the shooter. [RR9,10,11,12]. No witness testified to seeing any of the occupants of the Hummer (Appellant, Ortega or Tamez) shooting, possessing a

16

firearm, or as using a firearm. [RR9:196-205]; [RR10:167, 184, 201-203, 241-242]; [RR11:13-14]. Additionally, while the State initially claimed the shot were fired from the Hummer or a vehicle ahead of the Hummer this theory was flawed. During their case in chief, the States claimed the Hummer was in the middle of Molly Street when the shots were fired, but that was not true. The Hummer was parked on the sidewalk adjacent to the patio area located to the west of the Club. [RR10:206]. From this position it was impossible for the Hummer to have been located in the middle of Molly Street when the shots were fired. See [SX 87, 108, 167]. Additionally, there was no testimony that the Hummer drove north up Molly Street made a U-turn and then came back south on Molly Street to participate in the shooting. Further, as stated in the statement of facts, Appellant and his co-defendants returned to the scene of the crime less than 1 hour after they left the Club. They returned because a witness called Tamez to inquire whether he was involved in the shooting. [RR10:80, 120]. Tamez denied involvement and told the witness and officers that he wanted no problems and wanted to clear his name. [RR10:121-123]. After this phone call, Tamez, Ortega, and Appellant drove back to the club and met with law enforcement for over 6 hours to discuss the events that took place on the night of the shooting. [RR11:179-180]. Appellant drove the Hummer back to the Club and once they arrived, they all fully co-operated with law enforcement officials. [RR10:76-77]. Appellant and the co-defendants were

17

padded down, searched and placed in separate patrol units for further investigation. [RR10:76]. Appellant was cooperative, normal in disposition, and normal in temperament. [RR10:108]. Appellant gave consent to search the Hummer and a search was performed. [RR10:76-77, 107-108]. No weapons or other evidence was found inside the Hummer or on the person of Appellant. [RR10:79]. Appellants also submitted to questioning without counsel, they submitted to a gun residue testing, they allowed law enforcement to inspect and search the Hummer, and they allowed law enforcement to search their homes. [RR: 11: 51-57, 179-193, 201-204, 247]. Additionally, Appellant and the co-defendant allowed law enforcement to conduct a finger print analysis and gun residue test on the Hummer. [RR11:136, 145]. At no time did Appellant or any of the co-defendants admit to participating in the shooting made the basis of the indictment and at no time did law enforcement claim that Appellant was the shooter or a participant in the shooting. See [RR9, 10, 11, 12].

Subsequently, Appellant, Tamez, and Ortega were transported to the Laredo Police Department and interviewed regarding the shooting. [RR11:193, 205-207] [SX165]. The interrogation lasted about an hour and the interrogation revealed that Appellant was unaware that someone had been shot or that he participated in the shooting. [RR11: 205-207]. After the interrogation, Appellant gave

investigators consent to search his home and nothing was found. [RR11:51]. Appellant was subsequently allowed to return home and he was not arrested.

Clearly, under the facts of this case, the record is absent of evidence that Appellant possessed a gun, used a gun, saw any of the other defendants possess a gun, use a gun, or even that he knew a gun was possessed by either of his co-defendants. Additionally, the victims testified that they did not witness who the shooter was and did not identify Appellant as a shooter or as a participant. Accordingly, there is insufficient evidence to support a conviction of aggravated assault with a deadly weapon under a principal liability theory. *Pesina v. State*, 949 S.W.2d 374 (Tex.App.-San Antonio 1997) (finding insufficient evidence of direct liability where there was no direct evidence supporting the allegations that appellant intentionally or knowingly and acting along or as a primary actor stabbed the victim).

## C. Party Liability

There is also insufficient evidence to support a conviction under the law of parties. To convict under this party theory, the State was required to prove Appellant was criminally responsible by showing he was acting with intent to promote or assist the commission of the offense, by soliciting, encouraging, directing, aiding, or attempting to aid the other person in committing said offense. Tex. Pen Code. § 7.02(a)(2). Additionally, under the law of parties, the State was

required to show more than mere presence to establish participation in a criminal offense. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App. 1981). Mere presence or even knowledge of an offense do not make one a party to the offense. *Oaks v. State*, 642 S.W.2d 174, 177 (Tex.Crim.App.1982); *Monroe v. State*, 81 S.W. 726, 727 (App.1904). (holding mere fact defendant who was present but did not participate or aid in homicide, concealed the offense for a time or failed to report killing, did not make him guilty of any offense).

In this case, the State chose to try Appellant on a theory of party liability and submitted a jury charge reflecting criminal responsibility only on a party theory of liability. [CR1:423-426]. By limiting itself and submitting a party theory of liability the Jury could only convict Appellant if they found him responsible "as party by aiding." See Tex. Code Crim. P. art. 36.13 (the jury is governed by the law it receives form the Court); see also *Williams v. State*, 410 S.W.3d 411 (Tex.App.-Texarkana 2013) (the jury is bound by the law it receives from the court). However, the evidence was insufficient to support a conviction under the law of parties. Additionally, the evidence was also insufficient because the application paragraph of the jury charge contained no third party who Appellant aided in the commission of the crime. Without naming the third party that Appellant aided, there was no manner for which the jury could convict Appellant

as an aider. Additionally, there was no explanation in the jury charge of how Appellant aided the commission of the crime.

As stated previously, the State established Appellant's presence at the scene of crime prior to the shooting. However, the state failed to establish that Appellant was present during the shooting or that he participated in the shooting. No witness identified Appellant as a party to the offense and no witness identified Appellant as an aider. There was no evidence that Appellant aided any principal in the commission of the offense. *Gross v. State*, 380 S.W.3d 181 (Tex.Crim.App. 2012) (finding evidence insufficient to support conviction for murder under law of parties; although defendant was present at the crime scene and possessed the murder weapon, there was no evidence that indicated that defendant anticipated that the person he was with would shoot the victim, there was no evidence that the defendant assisted or encouraged the shooting, and there was no evidence of or prior or contemporaneous plan to commit the murder); *Wooden v. State*, 101 S.W.3d 542, 547 (Tex.App.-Fort Worth 203, pet. ref'd) ( the evidence was legally insufficient to support the defendant's conviction as a party to aggravated robbery, and thus, the defendant was entitled to an acquittal as there was no evidence that the defendant knew a gun was in the car or that the defendant aided or encouraged another passenger to threaten the witness with a gun, the defendant testified that he did not see any weapons when the defendant and accomplices were looking around

the truck they attempted to rob); *Williams v. State*, 410 S.W.3d 411 (Tex.App.-Texarkana 2013) (reversing and rendering judgment of acquittal when the evidence failed to show that Williams committed aggravated assault either as a principal or as a party to crime committed by Ramirez).

While Appellant associated with co-defendants prior to and subsequent to the shooting, his association with the co-defendants is no proof that Appellant committed the crime of aggravated assault with a deadly weapon. Additionally, there is no evidence whatsoever that Appellant knew that any of his co-defendants committed the crime charged or that his co-defendants committed any crime whatsoever. To the contrary, the evidence shows that Appellant did not participate in the shooting, he was not present when the shooting occurred, he did not possess a firearm, he did not reach for a gun, he did not pass a gun to someone, he did not shoot anyone, and he did not aid in any shooting. In fact, after learning that the police suspected co-defendant Tamez committed the crime, Appellant and his co-defendants returned to the scene of the shooting and submitted themselves to police investigation. Additionally, no witness identified Appellant as a participant in the shooting. Without participation, Appellant could not have aided in the shooting of any victim. His mere presence with the co-defendants prior to the shooting is no evidence of guilt. In essence, Appellant was merely present and was an occupant of a vehicle that may have been associated with the shooting that took

place on the night of July 7, 2013. There is no evidence that Appellant assisted in the shooting, that an offense would be committed or that an offense was committed. On the record of this case, there insufficient to convict Appellant of aggravated assault with a deadly weapon as a party to that offense. "Standing alone, proof that an accused was present at the scene of the crime or assisted the primary actor in making his getaway is insufficient [to hold the accused criminally responsible for the conduct of another]." *Wooden v., State*, 101 S.W.3d 542, 546 (Tex.App.—Fort Worth 2003, pet. ref'd). The record lacks any evidence that Appellant acted with the intent that any of the victims named in the indictment be shot and his mere presence, if any, is insufficient to sustain a guilty verdict. *Mize v. State*, 922 S.W.2d 175, 176 (Tex.Crim.App.1996); *Oaks v. State*, 642 S.W.2d 174, 177 (Tex.Crim.App.1982); *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Crim.App. 1981), *Wooden*, at 546. The State failed to prove Appellant intended to promote or assist any person by aiding any person in committing the act of aggravate assault with a deadly weapon. *See Wooden*, at 546. The evidence is therefore legally insufficient under this party liability theory as well.

**D.    Aggravated Enhancement**

Lastly, there is no evidence that shows that Appellant knew a weapon was being used or exhibited at any time while any other person committed the offense.

Neither did Appellant intend to cause bodily injury or know that any victim had sustained any type of injury during the shooting.

The offense of aggravated assault with a deadly weapon requires that the actor intentionally or knowingly assault another person with the intent to inflict serious bodily injury on him and uses or exhibits a deadly weapon during the commission of the offense. Tex. Pen. Code 22.02. The record lacks any evidence showing that Appellant himself ever used, exhibited, or even possessed a deadly weapon. No witness identified him as the shooter in this case. No witness identified any other person as the shooter in this case. It is clear from the record that there was no gun during Appellants presence at the scene of the crime and there is no evidence that Appellant was a participant in the shooting.

Additionally, no evidence was introduced to show that Appellant knew or saw that any person had a deadly weapon or that Appellant was even aware of the existence of a weapon in any vehicle he occupied. The only eye-witness, the victim, failed to testify about Appellant's involvement with, or possession of, any gun. As such the State failed to prove the necessary actions and intent required of Appellant.

There is also insufficient evidence to support a conviction under a party liability theory. Aggravated offenses present the same standard under Texas case law. "In order to convict a defendant as a party to an aggravated offense, the State

must prove that the defendant was criminally responsible for the aggravating element." *Wooden* at, 547-48 (Tex.App.—Fort Worth 2003, pet. ref'd); *See also Ervin v. State*, 333 S.W.3d 187, 201 (Tex.App.—Houston [1st Dist.] 2010, pet ref'd). Appellant claims that there was no evidence that he or any of the other co-defendant's possessed or used a weapon. The evidence does not show that Appellant knew anything about a gun. In fact, the record is devoid of any evidence that show any of the defendants possessed a gun. Even if a rational jury could have inferred that Appellant knew something had gone wrong or that someone had been shot, the evidence clearly does not show that he had knowledge of what the object of the crime was or that he participated in it. The fact that Appellant may have been an occupant of the Hummer is no evidence of a crime. Evidence at trial did not reveal any evidence regarding Appellant's knowledge of a weapon during the incident. Without evidence suggesting his knowledge of a gun, possession of a gun, or the disposal of a gun, a rational trier of fact could not have concluded beyond a reasonable doubt that Appellant's actions promoted or assisted any third party with the use of a weapon or the commission of the crime of aggravated assault with a deadly weapon. Tex. Pen. Code 22.02 (a)(1), (2); Tex. Pen Code. § 7.02(a)(2).

Reading the criminal responsibility statute in conjunction with the aggravated assault / enhancement statute, Appellant's actions as charged to the jury

would have had to aid a third party in committing aggravated assault with a deadly weapon. If Appellant's act of simply being an occupant in the Hummer could not have constituted being a party to aggravated assault with a deadly weapon, it logically follows that he could not have assisted or promoted by aiding in the use of a deadly weapon. *See Wooden*, at 546. Evidence did not show that Appellant possessed a weapon or that he even knew a weapon existed. Without evidence showing that Appellant somehow assisted or promoted a third party in causing serious bodily injury to the victims, or the he had knowledge of a gun, a rational jury could not have found this essential element of assisting or promoting this offense by aiding.

**II.   The trial court erred in instructing the Jury on the law of parties without identifying the principal actor, without referring the Jury to the abstract paragraph, and without providing the Jury the actions committed by Appellant that aided the commission of the alleged crime.**

**A.   Standard of Review**

Jury charge errors are reviewed by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738 (Tex.Crim.App.2005). The degree of harm necessary for reversal under the second inquiry depends on whether the appellant preserved the error. *Id*. at 743. "... If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more

than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless. "... the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). If the appellant failed to object, the appellate court will reverse only if there is "egregious harm." *Ngo* at 743-44. Egregious harm is demonstrated by showing that the appellant did not receive a fair and impartial trial. *Almanza* at 171. This determination requires an examination of the record as a whole and the actual degree of harm must be analyzed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id*. In this case, the jury charge error was preserved. [RR12:4-10].

## B. Deficient Jury Charge – Law of Parties

The trial submitted the case to the jury under the law of parties. [CR1:419-432]. However, the jury charge was deficient because the charge failed to correctly instruct the jury. The trial court failed to name the principal in the application paragraph of the jury charge, failed to identify the acts committed by the Appellant

27

that aided the commission of the named offense, and failed to refer the jury to another part of the jury charge that authorized the conviction under the law of parties. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex.Crim.App.2012) (failure to narrow the specific modes of party-liability conduct when properly requested is reversible error if the defendant has suffered actual harm to his rights). As to who the third was or what Appellant did to aid a third party, the State admitted and conceded during the charge conference that they did not know who the shooter was and they were not sure what actions were committed by the Appellant or the co-defendants that aided in the alleged offense.

STATE:    We just cannot – we don't have direct evidence as to saying that it was for sure, in fact, one of the individuals. [RR 11:254].

…

COURT:    If you're going to put the law of parties in, I'm going to require you put the mode in.

STATE:    Okay, Which is as to the specific factual scenario of which we're s saying she aided, for instance, the codefendant Jesse Ortega?

CHU:    All of them.

COURT:    All of them.

STATE:    Okay. Yeah, I know, but as to her, it has to be a factual – like for instance, let's say the driver, with the codefendant aiding by being the driver.

COURT:    Whatever the facts are

…

28

COURT:  But whatever the facts are that are supported by the record has to be linked based upon the case. And I did see that they raised that motion the first day, so that has to happen.

STATE:  Okay. That's fine, you Honor. That's fine. We'll provide that in more detail.

[RR 12:6-9].

During the charge conference on the third version of the jury charge, the Parties again requested that the state narrow the scope of it law of party's theory to the facts of the case, however, the State was unsure. In the Fourth and final draft of the jury charge, the state narrowed the scope of the law of party's theory to "aiding" by stating:

> "Now, if you find from the evidence, beyond a reasonable doubt, that on or about the 7th of day July, 2013, in Webb County, Texas, the defendant, Francisco Javier Azuara, Jr., as a party by aiding, did then and there intentionally, knowingly, or recklessly cause bodily injury to Angel Avitu-Cruz and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, you will find the defendant guilty of aggravated assault with a deadly weapon as charged in the indictment.

The same application paragraph was repeated for each victim identified in the indictment in counts 1-7. (CR1:423-426). However, the application paragraph was deficient. Because a jury charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense. *Vasquez v. State*, 389 S.W.3d 361 (Tex.Crim.App. 2012).

In this case, the State was required to identify who the Appellant aided and how the Appellant aided the offense. By failing to name a third party and by

29

failing to name how the Appellant aided in the offense, the Jury could not have returned a guilty verdict under the law of parties. See, e.g., *Vasquez v. State*, 389 S.W. 3d 361 (Tex. Crim. App. 2012) (commenting that although the trial judge did not name the principals in the application paragraph, there was no dispute at trail that those two men were the ones who actually carried guns, threatened Jenny and Zulma, and stole money and other property from the women, and defendant admitted he acted as the driver for his roommates, after they hatched the robbery scheme. From the confession, a reasonable jury cold infer the appellant was the one who solicited, encourages, or directed the others to commit the crime, and that he aided his roommates to carry out the robbery); *Plata v. State*, 926 S.W.2d 300, 304 (Tex.Crim.App.1996), overruled on other ground by *Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App.1997), stating (the instruction clearly did not direct the jury to convict either the appellant or his co-defendant under any specified conditions). Additionally, the jury had no instruction on how to apply the law of parties in the application paragraph and had no instruction on what the Appellant did to aid in the commission of the crime. Further, the State never argued conviction based on the law of parties during their closing arguments and instead argued the Appellant was responsible as a principal. [RR12:31-42, 61-69]; *Vasquez* at 368 (a general reference to the law of parties in the application paragraph is sufficient and is not error when the See, e.g., *Chatman v. State*, 846 S.W.2d 329

30

(Tex.Crim.App.1993) (holding application paragraph sufficient where application paragraph incorporated the law of parties by stating that the defendant "either action alone or as a party, as that term has been defined," sufficiently applied the law of parties to the facts of the case). Here there was no third party named, no evidence of third party action, no admissions by any defendant, no allegations of how Appellant aided in the offense, and the State conceded it did not know who any third party was or what a third party did. Where the application paragraph fails to define the manner in which the defendant acted as a party, error occurs. *Chatman v. State, 846 S.W.2d 329 (Tex.Crim.App.1993)* citing *Johnson v. State*, 739 S.W.2d 299 (Tex.Crim.App.1987). A charge which fails to apply the law to the facts is insufficient to authorize conviction on that theory. As such the charge as submitted in this case deprived the defendant of due process and a fair and impartial trial under the Fifth and Sixth Amendment of the United States Constitution as applied to the State through the Fourteenth Amendment. See *Marvis v. State*, 36 S.W.3d 878 (Tex.Crim.App.2001) (finding charge error resulted in egregious harm). The jury could therefore, not convict under the law of parties and Appellant must be acquitted on all counts. Alternatively, Appellant is entitled to a new trial under the law of parties.

**III.** **The trial court abused its discretion and erred in admitting hearsay testimony in violation of Rule 801(d) and Rule 802 of the Texas Rules of Evidence in violation of Appellant's substantial rights.**

**A.** **Standard of Review**

A timely and proper objection is sufficient to make the trial court aware of the complaint and preserves error. Tex. R. App. P. 33.1(a). Texas Rule of Appellate Procedure 44.2(b) provides that a non-constitutional error "that does not affect substantial rights must be disregarded." A violation of the evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *Jones v. State*, 111 S.W.3d 600, 604 (Tex.Crim.App. 2003). When a non-constitutional error is made during the course of a trial, it will be disregarded as a harmless error if the error did not affect the substantial rights of the appellant. *Gabriel v. State*, 973 S.W.2d 715, 719 (Tex.App.-Waco 1998, no pet.) citing Tex. R. App. P. 44.2; *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997)). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King* at 271. In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex.Crim.App. 2002) (footnote omitted). "[S]ubstantial

rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla, Id.* at 355 (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App.2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

## B. The trial court erred in admitting hearsay testimony over objection.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is inadmissible unless it meets an exception under the Texas Rules of Evidence. Tex. R. Evid. 802.

In this case, during the States' case in chief the State elicited hearsay testimony from Officer Aldo Alaniz about out of court statements allegedly made by witness Maria Santos. During the examination of Officer Aldo Alaniz, the prosecutor elicited hearsay testimony regarding the shooting made the basis of the indictment. The State began by asking Officer Aldo Alaniz about how many witnesses he interviewed on the night of the shooting in question. Then the State impermissibly elicited hearsay testimony from Officer Alaniz as follows:

Q.      Now, what about Maria Santos – how did she appear to you at the time?

A.      Pretty frightened, shaking, everybody was like scared.

Q.        Now, from the time that you arrived and you were able to make contact with Maria Santos, approximately how much time had elapsed from the time that you arrived to the time that you spoke to her?

A.        Maybe 10 or 15 minutes.

Q.        You say it was fairly close to the time of the shooting?

A.        Yes.

Q.        Now, Officer Alaniz, did she, in her frightened state, did she say anything to you as to what she might have heard or what she saw?

Mr. Chu:    Objection, hearsay, your Honor.

Court:      Overruled. You can answer.

A.        She stated to me that she had seen a white SUV that committed –that fired the shots.

Q.        And did she say anything else to you?

A.        That the individuals that had shot at the civilians were involved in a fight inside the bar.

This testimony was inadmissible hearsay because it was offered for no other purpose than to prove the matter asserted. *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex.Crim.App.1989) (holding a police officer's testimony was inadmissible hearsay because it was offered for no other reason than to inferentially prove what another office had told him). Additionally, the state offered no explanation as to what exception to the hearsay rule they were seeking to admit the out of court statement. [RR10:119].

The only exception to the hearsay rule the state could have offered would have been an excited utterance exception under Rule 803(2) of the Texas Rules of Evidence. An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex.Crim.App.2001). The basis for the excited utterance exception is "a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the "the truth will come out.'" *Evans v. State,* 480 S.W.2d 387, 389 (Tex.Crim.App.1972). In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event. *Id.*; *Ricondo v. State*, 475 S.W.2d 793, 796 (Tex.Crim.App.1971). A reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Fowler v. State*, 379 S.W.2d 345, 347 (Tex.Crim.App.1964). Responses to questioning that is calculated to elicit information about past events and activities are normally considered reflective narratives of past events and hence lack the spontaneity required to be admissible under the excited utterance exception. *Hughes v. State*, 128 S.W.3d

35

247 (Tex.App.-Tyler, 2003), citing *Glover v. State*, 102 S.W.3d 754, 765 (Tex.App.-Texarkana 2002, pet. ref'd).

In this case, the statement offered by Officer Alaniz allegedly came from witness Maria Santos who had been at the scene of the shooting for at least 25 to 30 minutes before Officer Alaniz had the opportunity to interact with the witness. [RR10: 109, 119]. The only thing Officer Alaniz stated about Maria Santos was that she appeared frightened and shaking. [RR10:118]. There was no other testimony regarding how Officer Alaniz obtained the statement from Maria Santos or what her state of mind was. Additionally, there was more than ample time to permit reflective thought from the witness and as such her alleged statement was hearsay. Where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. *Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex.Crim.App.2005). The State offered no evidence to allow the Court to adequately evaluate whether the witness had engaged in reflective thought and therefore, the Court erred in admitting the hearsay testimony.

In considering the harmful effect of the evidence to Appellant's substantial rights, the State elicited hearsay testimony from Officer Aldo Alaniz about a statement allegedly made by Maria Santos. Officer Alaniz testified that Maria

Santos told him that "she had seen a white SUV that committed – that fired the shots, that the individuals that had shot at the individuals were involved in a fight inside the bar." [RR10:119]. The inference from this testimony was that Appellant and the co-defendants were occupants of the SUV (white Hummer) and therefore, Appellant and his co-defendants were the shooters. However, during Maria Santos testimony, Ms. Santos testified that she did not see the shooting and did not see who shot. [RR10:201-202]. She also testified that she never told Officer Alaniz that the shots came from a white SUV. [RR10:203-204]. Lastly, she testified that she only stated that the people who had fought arrived in a white Hummer. [RR10:203-204]. Had the State not elicited the improper and incorrect hearsay testimony form Officer Alaniz, the Jury would not have heard the allegation that Maria Santos saw the occupants of the white Hummer commit the shooting. The jury was left with the impression that the shooter occupied the white Hummer and therefore, there is no fair assurance that this information did not influence the jury in their decision to return a verdict of guilty. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998) (a criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect). The erroneous admission of the hearsay testimony affected Appellant's substantial rights and a new trial is warranted.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays this Court to reverse his conviction and enter an order of acquittal. Alternatively, Appellant respectfully prays that this Court reverse his conviction and remand the case to the trial court for further proceedings.

Respectfully submitted,

/s/ Oscar A. Vela, Jr.
Oscar A. Vela, Jr.
State Bar No. 24004967

**THE LAW OFFICE OF
OSCAR A. VELA, JR., P.C.**
1004 E. Hillside Rd., Ste. B
Laredo, Texas 78041
Telephone: (956) 568-0221
Facsimile: (956) 568-0052
ovela@thevelafirm.com

Attorney for Appellant

## CERTIFICATE OF SERVICE

By affixing my signature above, I hereby certify that a true and correct copy of the foregoing was hand-delivered/faxed to the Webb County District Attorney's Office 1110 Victoria Street, Suite 401, Laredo, Texas 78040, on February 6, 2015.

/s/ Oscar A. Vela, Jr.