

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00191-CR

DARREUS DEMONT WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 26,910

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Darreus Demont Williams was convicted by a jury of aggravated assault by use of a deadly weapon. Williams pled true to the State's enhancement allegation and was sentenced to seven years' imprisonment. On appeal, Williams argues that the evidence is legally insufficient to support his conviction.[1] We agree, reverse the trial court's judgment, and render a judgment of acquittal.

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while keeping in mind that the credibility of witnesses is the sole province of the jury and that we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*,

---

[1] Williams also appeals from the following convictions entered on the same date: aggravated assault against a public servant (cause number 06-12-00189-CR); aggravated assault by use of a deadly weapon (cause number 06-12-00191-CR); aggravated assault by use of a deadly weapon (cause number 06-12-00192-CR); and aggravated robbery with a deadly weapon (cause number 06-12-00193-CR). The complete factual background giving rise to all of these convictions is the same and is set forth in our opinion of this date in cause number 06-12-00193-CR. Therefore, this opinion only discusses the facts necessary to decide this opinion.

443 U.S. at 318–19); *Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011, pet. ref'd).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The indictment in this case alleged that Williams, individually and acting together with Guadalupe Ramirez, III, intentionally or knowingly caused bodily injury to Joanna Brock by striking her in the head while using or exhibiting a firearm. Williams individually committed the offense of aggravated assault with a deadly weapon if (1) he (2) intentionally or knowingly[2] (3) caused bodily injury to Brock (4) while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (West 2011). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2012).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). "A person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the

---

[2]The indictment did not allege that the assault was caused recklessly.

3

commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). Thus, Williams committed aggravated assault with a deadly weapon as a party if he acted with intent to promote or assist Ramirez in the commission of the offense by encouraging, aiding, or attempting to aid him in the aggravated assault of Brock with a firearm.

The evidence was sufficient to convict Williams if he was physically present at the commission of the offense and encouraged its commission by Ramirez by words or other agreement. *Hartsfield*, 305 S.W.3d at 864 (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g)).

In our opinion in cause number 06-12-00193-CR, we explained that the evidence was sufficient for the jury to find that Williams was one of three men who robbed Bonnie Lou's Game Room (Game Room), and that all three robbers, Williams, Ramirez, and Vincent Thomas, were acting together.[3] At trial, Brock testified that the double doors of the Game Room "burst open. And these guys came in. And one of them shot off a gun. And the whole time that they were there, they were yelling, screaming, get down; get up; get in the corner; give me your cell phone." Yielding to their commands, Brock laid down on the floor.

Brock was assaulted while she was witnessing a man with a "blue hoodie . . . kicking some man on the floor." She testified, "[T]he next thing I -- I didn't even get all the way up, and then he came up from behind and hit me in the head with, I assume, his gun. It was something

---

[3]It was established that robber Thomas wore a gray hoodie, another robber wore a blue hoodie, and the last wore a red or multi-colored hoodie. Witness Darlene Robinson testified, "[T]here was a gray one, and then two dark-colored ones."

hard and metal.  I have a scar on my head up here.  My eye was black and swelled shut for a week.  When I came to, they were gone."

Brock's sister, Robinson, described the assault as well:

me and my sister[, Brock,] laid down.  And then the guy in the front of the building kept saying, everyone get up and get up here.  So we raised our heads up to see if we were supposed to go up to where that guy was. And then someone came down the row behind us and hit her on the head and then hit me on the head and went on to the front of the building.

Robinson testified they were hit with either "the butt or the barrel" of a gun.  Robinson continued, "I guess he hit [Brock] harder than me because she immediately fell and her face went down on the floor.  And at that point I still had my head raised because I was trying to cover her up.  And then he hit me, and then my head went down with her."

The following testimony by Robinson suggests that Thomas was actually the person who committed the assault of the sisters:

A       [By Robinson] The one that was holding the gun was -- the one that was holding the gun was slender and fairly tall.[4]  The one that was standing up in front and hollering for the people to come up there was a black guy that weighed more than the other one and not quite as tall.  And then there was one in the back that was heavy built.

Q       [By State] Let's focus on the other black guy that was heavier. You say he was standing up at the front. What was he yelling?

A       He was the one that was yelling, everybody get up here and get in the corner.

Q       And then you said the other guy that -- this would be the one that you weren't sure if [he] was Hispanic, you said he was heavier, as well?

---

[4]The evidence demonstrated that Thomas, who was wearing the gray hoodie, was a tall, slender, African-American male.  The autopsy report revealed Thomas was a 5'11" black male weighing 174 pounds.  Ramirez was described as an Hispanic male weighing approximately 250 pounds.  Williams was described as an African-American male weighing 200 pounds.

A       Yes.

Q       And what was he doing?

A       He was in the back part of the building yelling, everybody do what they say.

Q       Well, if you only saw one -- I believe you said one gun -- that would be the guy that was black and was slender and tall?

A       Yes, the taller one.

Q       And I think you said you saw him hit your sister.  Is he also the same one that hit you?

A       Yes.

Thus, the evidence cannot show that Williams acted with intent to promote or assist Ramirez in the commission of the offense because all of the evidence presented shows the offense was committed by Thomas, a person who was not included in the State's indictment.  As discussed below, this renders the evidence insufficient to support Williams' conviction.

The hypothetically correct jury charge cannot completely rewrite the indictment, but such a charge need not "track exactly all of the allegations in the indictment."  *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001).  The "'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument."  *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000), *overruled in part on other grounds by Gollihar*, 46 S.W.3d 243.  Thus, if the essential elements of the offense are modified by the indictment, the modification must be included.  *Gollihar*, 46 S.W.3d at 254.  However, the

6

hypothetically correct charge "need not incorporate allegations that give rise to immaterial variances." *Id.* at 256.

It is well settled that the law of the parties need not be pled in the indictment. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002). Yet, here, the law of the parties was included as a part of the indictment in this case, and the court's charge instructed the jury as follows:

> Now, if you believe from the evidence beyond a reasonable doubt that in Hunt County, Texas, on or about the 21st day of February, A.D. 2010, the defendant, DARREUS DEMONT WILLIAMS, individually and acting together with GUADALUPE RAMIREZ, III, did then and there by using and exhibiting a deadly weapon, to-wit: a firearm, intentionally and knowingly cause bodily injury to JOANNA BROCK by striking JOANNA BROCK in the head, causing her pain, then you will find the defendant Guilty of Aggravated Assault by Use of a Deadly Weapon as charged.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of Aggravated Assault by Use of a Deadly Weapon and say by your verdict Not Guilty.

The jury is governed by the law it receives from the court. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007).

> As explained in *Curry*,
>
> Sometimes the State alleges evidentiary matters in its indictment which are not "necessary to be proved" under Art. 21.03. These allegations are considered "surplusage." In *Burrell v. State*, we explained that "allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment are treated as mere surplusage, and may be entirely disregarded." The exception to that rule is when "the unnecessary matter is descriptive of that which is legally essential to charge a crime." In *Upchurch v. State*, we explained that extra language is "descriptive" of an element of the offense if it "define[s] the offense more narrowly, place[s] it in a specific setting, or describe[s] the method by which it

7

was committed." Such language "must be proven as alleged, even though needlessly stated."

30 S.W.3d at 399 (citing *Burrell v. State*, 526 S.W.2d 799, 802 (Tex. Crim. App. 1975); *Upchurch v. State*, 703 S.W.2d 638, 641 (Tex. Crim. App. 1985)).

While party liability does not define the statutory offense itself, it "describe[s] alternative manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense." *Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011). Here, the State alleged that Williams committed aggravated assault acting together with Ramirez. "The State's charging choices, then, become part of the law applicable to the case." *In re State ex rel. Weeks*, 391 S.W.3d 117, 123 (Tex. Crim. App. 2013). Thus, "[p]arty liability is as much an element of an offense as the enumerated elements prescribed in a statute that defines a particular crime." *Id.* at 124. Because the party liability allegation "explains or described the offense," it was required to be proven as alleged. *Upchurch*, 703 S.W.2d at 640.

In sum,

[i]f the State chooses to specifically plead a complicity theory, general variance law would apparently apply. A showing of guilt on the basis of personal commission of the crime or on the basis of a complicity theory available under the Penal Code but not pled in the charging instrument would, then, require acquittal.

43A Dix and Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 52:48 (3d ed. 2011).

The evidence failed to show that Williams committed aggravated assault either as a principal or as a party to crimes committed by Ramirez. We sustain Williams' point of error.

Accordingly, we reverse the judgment of the trial court and render a judgment of acquittal.


Bailey C. Moseley
Justice

Date Submitted:     July 26, 2013
Date Decided:      August 2, 2013

Do Not Publish

9