**421-15**

No. 06-14-00050-CR

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 13 2015

Abel Acosta, Clerk

IN THE COURT
OF
CRIMINAL Appeals
OF TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

Chad Ray Bennett

PETITIONER

V.

THE STATE OF TEXAS

RESPONDENT

PETITION IN CAUSE NO. 29345-2014
FROM THE 354TH JUDICIAL DISTRICT
COURT OF HUNT COUNTY, TEXAS

THE COURT OF APPEALS FOR THE
SIXTH DISTRICT OF TEXAS

Petition FOR Discretionary Review

CHAD BENNETT # M23337
TELFORD UNIT
3899 STATE HWY 98
NEW BOSTON, TX. 75570

PETITIONER, PRO SE

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES............................ ii
STATEMENT REGARDING ORAL ARGUEMENT........ 2
STATEMENT OF THE CASE ........................ 2
STATEMENT OF PROCEDURAL HISTORY ............ 2
REASONS FOR REVIEW ............................ 3
STATEMENT OF FACTS ......................... 4, 5

GROUND FOR REVIEW ONE ....................... 5, 6
    THE APPELLATE COURT ERRED IN FINDING THAT THE EVIDENCE IS LEGALLY SUFFICIENT TO JUSTIFY A FINDING OF GUILT FOR THE OFFENSE OF FORGERY OF A FINANCIAL INSTRUMENT, AS CHARGED ON THE INDICTMENT.

GROUND FOR REVIEW TWO ......................... 8
    THE APPELLATE COURT ERRED IN HOLDING THAT THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURTS FINDING OF TRUE ENHANCEMENT ALLEGATIONS

SUMMARY ........................................ 10
  CERTIFICATE OF SERVICE ...................... 10
PRAYER FOR RELIEF ............................. 10

PETITION TO WAIVE RULE 9.3 (11 COPIES) ......... 11

UNSWORN DECLARATION ........................... 11

# INDEX IF AUTHORITIES

CASE LAW:

ACILA V. STATE
834 S.W. 2d 857 (TEX. CRIM. APP. 1992) . . . . . . . . . . 3

BROOKS V. STATE
323 S.W. 3d 893 (TEX. CRIM. APP. 2010) . . . . . . . . . 3,5,6

JACKSON V. VIRGINIA
443 U.S. 319 (1979) . . . . . . . . . . . . . . . . . . . . 3,5

EX PARTE HUNTER
616 S.W. 2d, 626 (TEX CRIM APP 1981) . . . . . . . . . 4,9

EX PARTE CLARK
597 S.W. 2d 760 (TEX CRIM APP 1979) . . . . . . . . . 7

STATE V. MANCUSO
(CRIM. APP. 1996) 919 S.W. 2d 86 . . . . . . . . . . . . 8


STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
TEX PENAL CODE 32.21 (b) . . . . . . . . . . . . . . . . 2,8
TEX PENAL CODE 12.425 . . . . . . . . . . . . . . . . . . 7
TEX PENAL CODE 32.21 (F) . . . . . . . . . . . . . . . . 7


Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Rule 9.3, TEX R APP. PROC . . . . . . . . . . . . . . . . 11

## 2

## STATEMENT REGARDING ORAL ARGUMENT

IN THE EVENT THIS PETITION IS GRANTED, THE PETITIONER REQUESTS ORAL ARGUMENT. ARGUMENT WOULD ASSIST THE COURT BECAUSE RESOLUTION OF THE GROUNDS FOR REVIEW DEPENDS UPON A DETAILED EXPLORATION OF THE FACTS OF THE CASES. FURTHER, ORAL ARGUMENT WOULD PROVIDE THIS COURT WITH AN OPPERTUNITY TO QUESTION THE PARTIES REGARDING THEIR POSITIONS.

## STATEMENT OF THE CASE

APPELLANT WAS CHARGED WITH THE OFFENSE OF FORGERY BY PASSING A FINANCIAL INSTRUMENT, A STATE JAIL FELONY, IN VIOLATION OF TEX. PENAL CODE § 32.21 (d). THE INDICTMENT, AS APPELLANT UNDERSTANDS IT, ALLEGED THAT APPELLANT, ON OR ABOUT MARCH 18, 2013, ENTERED DRAKES JEWELRY STORE, IN GREENVILLE, TEXAS, WITH THE INTENT TO DEFRAUD OR HARM ITS PROPRIATOR, AND ISSUED A $478.00 "SAT ENTERPRISES" COMPANY CHECK FOR 2 RINGS AND 1 WRISTWATCH.

APPELLANT ENTERED A PLEA OF NOT GUILTY. HE WAS AFFORDED A TRIAL ON THE MERITS, IN THE PRESENCE OF A JURY, WHO FOUND HIM GUILTY OF THE OFFENSE AS CHARGED. HE ELECTED TO BE SENTENCED BY THE HONORABLE JUDGE OF THE 354TH DISTRICT COURT, IN HUNT COUNTY, TEXAS, WHEREIN HE RECEIVED A 13 YEAR PRISON TERM BECAUSE OF ENHANCEMENTS, PURSUANT TO TEX. PENAL CODE § 12.425. NOTICE OF APPEAL WAS TIMELY GIVEN AND PERFECTED.

## PROCEDURAL HISTORY

THE JUDGEMENT OF PETITIONERS CONVICTION WAS ENTERED ON FEBRUARY 17, 2014. PETITIONERS NOTICE OF APPEAL WAS TIMELY FILED, ON MARCH 12, 2015, THE SIXTH DISTRICT COURT OF APPEALS ISSUED AN UNPUBLISHED OPINION BY JUSTICE MOSELEY AFFIRMING PETITIONERS CONVICTION.

# GROUNDS FOR REVIEW

## Grounds For Review No. 1

The Appellate Court erred in finding that the evidence is legally sufficient to justify a finding of guilt for the offense of forgery of a financial instrument, as charged in the indictment.

## Ground For Review No. 2

The Appellate Court erred in holding that there was sufficient evidence to support the trial court's finding of true to enhancement allegations.

## Reasons For Review

The Sixth Court of Appeals affirmed the conviction in this case despite the overwhelming evidence that classifies the offense committed as a lesser violation than the one charged. The 6th Court of Appeals did not discharge its duty of review to conscientiously and impartially apply the law of Jackson V. Virginia, 443 U.S. 319 (1979) and Brooks V. State, 323 S.W. 3.d 893 (Tex. Crim. App. 2010), to a fair consideration of all the evidence. See Arcila V. State, 834 S.W. 2d 357, 360-61 (Tex. Crim. App. 1992).

Likewise, the 6th Court of Appeals did not fairly evaluate the evidence they considered sufficient enough to support the trial courts finding of true enhancement allegations. One of the enhancement paragraphs listed on the appellants indictment wrongly accused him of committing a burglary of habitation in 2007. This raises the range of punishment to reflect a second degree felony, as opposed to that of a third degree felony. The statutory limit was exceeded, resulting in an illegal sentence of thirteen years. See Ex Parte Hunter 616 S.W. 2d, 626 (Tex. Crim. App. 1981)

## Statement of Facts

On March 18, 2013 Petitioner entered "Draves" jewelry store, in Greenville, Texas, in search of engagement rings for both him and his fiancé, Alesha Tillery. He was transported to this location by his employer, Craig. The appellant was in possession of a debit card, bearing his mothers name, from a joint account he shares with her. Uncertain if the amount of monies made available on said account, the appellant solicited his employer for a company check to cover whatever difference was left weighing in the balance. $500.00 was owed to the appellant for labors done, by his employer, Craig, a sub-contractor for "SAT Enterprises." 2 rings and 1 wristwatch was selected and made ready for purchase. Appellants debit card was rejected & so he asked the sales clerk if she would accept a company check. When she answered in the affirmative, the appellant wrote a check in the amount of $475.00 using his very own true and correct, state issued I.D., signed his own name to the check,

AND KEPT THE AMOUNT OF HIS PURCHASE UNDERNEATH THE $500.00 OWES TO HIM FOR WORK LABORS. APPELLANT WAS AUTHORIZED BY HIS EMPLOYER, A COMPANY AGENT, TO MAKE THIS TRANSACTION.

THERE IS NO EVIDENCE AMIDST ALL THESE FACTS TO INDICATE THAT A FORGERY OF ANY SORT OCCURRED. A TRUE AND CORRECT I.D. WAS USED BY THE APPELLANT AND HIS TRUE AND CORRECT SIGNATURE WAS ISSUED ON THE CHECK. NO ONE FROM THE COMPANY OF "SAT ENTERPRISES" EVER EVEN ATTEMPTED TO PURSUE CHARGES AGAINST HIM. CHARGES WERE FILED BY THE RECIPIENT, DRAKES JEWELERS, FOR RECEIVING AN INSUFFICIENT CHECK; MAKING THE TRUE NATURE OF THIS OFFENSE A MISDEMEANOR, AT BEST, THEFT OF SERVICES. THERE WAS NEVER ANY INTENT TO DEFRAUD OR HARM THE PROPRIATOR.

## Ground For Review No. 1, Restated

THE APPELLATE COURT ERRED IN FINDING THAT THE EVIDENCE IS LEGALLY SUFFICIENT TO JUSTIFY A FINDING OF GUILT FOR THE OFFENSE OF FORGERY OF A FINANCIAL INSTRUMENT, AS CHARGED IN THE INDICTMENT.

IN BROOKS V. STATE, 323 S.W. 3d, 893 (TEX. CRIM. APP. 2010) THIS HONORABLE COURT EMPHASIZES THAT "A RIGOROUS AND PROPER APPLICATION OF THE JACKSON V. VIRGINIA LEGAL SUFFICIENCY STANDARD IS AS EXACTING A STANDARD AS ANY FACTUAL SUFFICIENCY STANDARD." IN DISPENSING WITH THE CLEWIS FACTUAL SUFFICIENCY STANDARD, THE COURT DID NOT INTEND THAT THE INQUIRY BE ONE OF DETERMINING IF THERE IS A "SCINTILLA OF EVIDENCE" SUPPORTING THE JURYS VERDICT. THE REVIEWING COURT MUST TAKE INTO ACCOUNT ALL THE EVIDENCE; VIEWED IN LIGHT MOST FAVORABLE TO THE JURYS VERDICT, TO DETERMINE IF THE EVIDENCE SUPPORTS A RATIONAL AND REASONABLE FINDING OF GUILT, BEYOND A

6.

REASONABLE DOUBT. SEE BROOKS V. STATE, AT N. 26. WHEN TAKING ALL THE EVIDENCE INTO ACCOUNT, THE REVIEWING COURT MUST NOT MISSTATE THE EVIDENCE TO REACH A DESIRED RESULT.

FACTS: ON MARCH 18, 2013 PETITIONER WAS TRANSPORTED TO AN ESTABLISHMENT CALLED "DRAKES JEWELERS" BY HIS EMPLOYER, CRAIG, A SUB-CONTRACTOR TO "SAT ENTERPRISES," FOR THE PURPOSE OF PURCHASING A PAIR OF ENGAGEMENT RINGS FOR BOTH HIMSELF AND HIS FIANCE, ALESHA TILLERY. UNCERTAIN ABOUT THE AMOUNT OF MONIES AVAILABLE ON THE DEBIT CARD HE WAS CARRYING, HE SOLICITED HIS EMPLOYER FOR EITHER CASH OR A COMPANY CHECK TO HELP COVER THE PRICE OF THE PURCHASE HE ASPIRES TO MAKE. "SAT ENTERPRISES" OWED THE APPELLANT $500.00 FOR GENERAL LABOR AT THE SAME TIME THIS EVENT OCCURRED. HE WAS ENTRUSTED WITH A COMPANY CHECK AND AUTHORIZED TO ISSUE IT, BY A COMPANY AGENT, WITH THE UNDERSTANDING THAT HE WOULD LIMIT HIS PURCHASE TO NO MORE THAN $500.00, THE AMOUNT OWED TO HIM.

IT WAS UPON THESE PREMISES THAT THE APPELLANT ENTERED DRAKES JEWELERS TO MAKE HIS PURCHASE. THERE WAS NEVER ANY PRECONCEIVED INTENT TO DEFRAUD THE PROPRIATOR OF MERCHANDISE. THE APPELLANT TOLD THE SALES CLERK ON SEVERAL DIFFERENT INSTANCES THAT THE AMOUNT OF HIS PURCHASE COULD NOT EXCEED $500.00, AS SHE ATTESTED TO DURING TRIAL. IN ADDITION, THE APPELLANT ALSO ATTEMPTED TO MAKE THE PURCHASE USING HIS DEBIT CARD BEFORE ASKING HER IF SHE WOULD ACCEPT A COMPANY CHECK. FINALLY, AFTER PURCHASING TWO RINGS AND ONE WRISTWATCH, THE APPELLANT USED HIS OWN TRUE AND CORRECT I.D. CARD WHEN ISSUING THE CHECK, SIGNING HIS VERY OWN TRUE & CORRECT SIGNATURE BEFORE LEAVING THE ESTABLISHMENT WITH HIS PURCHASE. YET, DESPITE ALL

THIS, THE SIXTH COURT OF APPEALS FOUND THAT PETITIONERS INTENT TO DEFRAUD WAS SOMEHOW INFERRED FROM HIS ACTS, WORDS, OR CONDUCT.

ACCORDING TO TEXAS PENAL CODE 32.21 (F) "A PERSON IS PRESUMED TO INTEND TO DEFRAUD OR HARM ANOTHER IF THE PERSON ACTS WITH RESPECT TO TWO OR MORE WRITINGS OF THE SAME TYPE."

ONLY ONE CHECK WAS EVER ISSUED, AND THAT CHECK WASN'T FORGED.

ALTHOUGH THE APPELLANT WAS BOTH PROSECUTED AND CONVICTED FOR A FORGERY, NO FORGERY WAS PROVEN TO HAVE OCCURRED. TO PROVE A FORGERY, AND TO UPHOLD ANY SUCH CONVICTION, IT MUST BE SHOWN THAT THE ACT WAS NOT AUTHORIZED. THE COMPANY LISTED ON THE CHECK WAS A LEGITIMATE COMPANY. THE CHECK DERIVED FROM A LEGITIMATE ACCOUNT. YET, NO ONE ASSOCIATED WITH SAID COMPANY EVER SURFACED TO SUPPORT THE PROSECUTIONS CLAIM. NO REPRESENTATIVE FROM SAT ENTERPRISES EVER COMPLAINED ABOUT THIS EVENT. NO CHARGES WERE FILED BY SAT ENTERPRISES IN ORDER TO CLASSIFY THIS AS A FORGERY. CHARGES WERE, INSTEAD, FILED BY THE RECEPIENT, DRAKES JEWELERS, FOR RECEIVING A BAD CHECK IN THE AMOUNT OF $475.00, A MISDEMEANOR THEFT OF SERVICE.

APPELLANTS INTENT TO DEFRAUD CANNOT BE "INFERRED" UNLESS IT IS PROVEN THAT SOMETHING WAS FORGED. TO DO THAT, SOMEONE ASSOCIATED WITH THE COMPANY LISTED ON THE INSTRUMENT USED TO MAKE THE TRANSACTION MUST GIVE TESTIMONY. AS A RESULT, APPELLANT HAS BEEN CONVICTED OF THE WRONG OFFENSE. THESE SORT OF DISCERNMENTS MIGHT HAVE BEEN DETECTED HAD THE LAW BEEN APPLIED TO THE FACTS DURING JURY CHARGE. SEE EX PARTE CLARK 597 S.W. 2d 760 (TEX. CRIM. APP. 1979)

NO REASONABLE JURY COULD HAVE FOUND PETITIONER GUILTY ON THIS EVIDENCE AND HE IS ENTITLED TO AT LEAST ONE FAIR CONSIDERATION OF ALL THE EVIDENCE UNDER THE JACKSON V. VIRGINIA AND BROOKS V. STATE STANDARD

## GROUND FOR REVIEW No. 1

THE APPELLATE COURT ERRED IN HOLDING THAT THERE WAS SUFFICIENT EVIDENCE TO SUPPORT TRIAL COURTS FINDING OF TRUE ENHANCEMENT ALLEGATIONS.

APPELLANT HAS BEEN ENHANCED UNDER SECTION 12.425 OF THE TEXAS PENAL CODE AND GIVEN AN ILLEGAL PRISON SENTENCE, THE TWO FELONIES LISTED SEPERATELY, FOR ENHANCEMENT PURPOSES ON PETITIONERS INDICTMENT WERE BOTH PART OF A CONCURRENT SENTENCE ISSUED IN 1997. THE 6TH COURT OF APPEALS ERRED IN STATING THAT "BENNETT PLEA GUILTY TO A BURGLARY OF A HABITATION IN 2007" AND WAS SENTENCED TO FOUR YEARS. THE PETITIONER DID NOT PLEAD GUILTY TO ANY SUCH OFFENSE IN 2007.

THE SEVEN YEAR PRISON SENTENCE APPELLANT RECEIVED IN 1997 WAS A CONCURRENT SENTENCED ISSUED FOR THE ONLY TWO BURGLARIES EXISTENT IN HIS CRIMINAL HISTORY, AND THERE WAS NO FINAL CONVICTION RENDERED IN THE INITIAL OFFENSE BEFORE THE SUBSEQUENT OFFENSE OCCURRED. THIS PROTECTS THE PETITIONER AGAINST PROSECUTION UNDER SECTION 12.425 OF THE TEXAS PENAL CODE, FOR PURPOSES OF ENHANCEMENT. NEVERTHELESS, PETITIONER HAS BEEN CONVICTED ON THE TERMS OF THIS STATUTE AND SENTENCE TO 13 YEARS FOR A STATE JAIL FELONY, AS A RESULT.

IN 2007 THE APPELLANT WAS PROSECUTED FOR A FORGERY IN DALLAS COUNTY, A STATE JAIL FELONY; NOT A BURGLARY, AS THE SIXTH COURT OF APPEALS SUGGESTS. ENHANCEMENT LAWS PERTAINING TO STATE JAIL FELONIES DIFFER FROM THE ENHANCEMENT LAWS THAT GOVERN ALL OTHER FELONIES (SEE STATE V. MANCUSO (CR APP 1996) 919 S.W. 2d 86), REMOVING THIS 2007 CONVICTION FROM THE CRITERIA LISTED UNDER 12.425 (X) OF THE TEXAS PENAL CODE. THIS LEAVES ONLY ONE RELEVANT ENHANCEMENT PARAGRAPH

ON THE PETITIONERS INDICTMENT, BRINGING THE PUNISHMENT RANGE FOR THIS OFFENSE IN BETWEEN 2 AND 10 YEARS, PETITIONER IS SERVING AN ILLEGAL SENTENCE. SEE EX PARTE HUNTER 616 S.W. 2d 626 (TEX CRIM. APP. 1981).

IT IS STATED ON PAGE 10 OF THE COURT OF APPEALS MEMORANDUM THAT PETITIONER BENNETT DID NOT MAKE "AN OBJECTION NEITHER TO THE SUBSTANCE NOR THE FORM OF THE INDICTMENT," WHEN IN FACT APPELLANT WAS NEVER GIVEN A SINGLE OPPORTUNITY TO SEE THE INDICTMENT. NO INDICTMENT WAS EVER SERVED TO HIM, PERSONALLY; NO INDICTMENT WAS EVER PRESENTED BY APPOINTED COUNSEL, ALTHOUGH MANY REQUESTS WERE MADE. PETITIONER SOUGHT TO RESOLVE ALL PRESSING LEGAL ISSUES BEFORE THE INDICTMENT WAS EVER ISSUED, BY SUBMITTING A PRO SE "MOTION FOR EXAMINING TRIAL" TO THE 354TH DISTRICT COURT OF HUNT COUNTY, TEXAS, TO NO AVAIL. HE WAS DENIED. THE MOTION WAS FILED BY THE DISTRICT CLERK, BEFORE THE SUBSEQUENT INDICTMENT WAS ISSUED, AND IS LISTED ON RECORD. SEEKING AN EXAMINING TRIAL IS "AN OBJECTION TO THE SUBSTANCE OF THE INDICTMENT," FOR ALL INTENTS AND PURPOSES.

THE STATE INTRODUCED COPY OF THE JUDGEMENT OF PETITIONERS 2007 CONVICTION WAS ERRONEOUS, WHATEVER IT MAY HAVE RECITED. THIS WENT UNDETECTED UNTIL NOW BECAUSE NO CHARGING INSTRUMENT WAS EVER SEEN BY THE PETITIONER. AND THIS MISTAKE CHANGES THE LANDSCAPE OF ENHANCEMENT STANDARDS AS THEY PERTAIN TO HIS CASE.

AN APPELLATE COURT REVIEWS THE RECORD AS A WHOLE TO DETERMINE WHETHER A STATUTORY ERROR VIOLATES DUE PROCESS BY INSPIRING THE ISSUANCE OF AN ILLEGAL PRISON SENTENCE.

## 10.

## SUMMARY

The justices of the Court of Appeals based their decision that the evidence was sufficient to affirm petitioners conviction condemning him to 13 years in the penitentiary, for the offense of a state jail felony, a forgery; and their decision to affirm erroneous paragraph enhancements, was all been based on a great deal of falsehood.

## PRAYER FOR RELIEF

For the reasons stated, the petitioner was denied a fair trial in Cause No. 06-14-00050-CR. Therefore, appellant prays that this court grant his petition for discretionary review and upon reviewing the judgement entered below, reverse this cause and dismiss the prosecution or remand it for a new trial.

Respectfully,

Chad Bennett

PETITIONER, PRO SE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing petition for discretionary review has been served, via United States mail to Noble D. Walker Jr., Hunt County District Attorney, P.O. Box 441, Greenville, Texas, 75403-0441 and on the State Prosecuting Attorney, P.O. Box 12405, Austin, Tx., 78711, by United States mail on this 8th day of April, 2015.

Respectfully,

Chad Bennett

PETITIONER, PRO SE

## 11.

### PETITION TO WAIVE RULE 9.3

APPELLANT IN THIS FOREGOING "PETITION FOR DISCRETIONARY REVIEW" IS AN ISOLATED PRISONER OF THE STATE AND HAS NO ACCESS TO EITHER A TYPEWRITER, OR A COPY MACHINE. TIME RESTRAINTS WON'T ALLOW HIM TO HANDWRITE THE REQUIRED 11 COPIES TO SATISFY THE COURT.

IT IS, THEREFORE, PRAYED BY THE PETITIONER THAT THE HONORABLE JUDGES SEATED IN THE COURT OF CRIMINAL APPEALS WILL SHOW MERCY AND WAIVE THE DEMANDS OF THIS RULE FOR PURPOSES OF EXPEDIENCY.

ON THIS 8TH DAY OF APRIL, 2015

RESPECTFULLY,
Chad Bennett
PETITIONER, PRO SE

### UNSWORN DECLARATION

APPELLANT, CHAD RAY BENNETT, DOES HEARBY SWEAR, UNDER THE PENALTY OF PERJURY, PURSUANT TO TITLE 28 U.S.C., THAT ALL THE INFORMATION INCLUDED IN THIS PETITION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

RESPECTFULLY,
Chad Bennett
PETITIONER, PRO SE



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00050-CR
_____

CHAD RAY BENNETT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29,345

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After a Hunt County jury convicted Chad Ray Bennett of forgery by passing a financial instrument, a state jail felony,[1] Bennett elected to place the issue of punishment before the trial court. After the trial court found that the State's enhancement allegations were true, Bennett was sentenced to thirteen years' imprisonment. On appeal, Bennett argues that the evidence was legally insufficient (1) to support the jury's finding of guilt, and (2) to elevate his range of punishment to that of a second degree felony.

We find that legally sufficient evidence supports both Bennett's conviction and the enhancement of his sentence, and we affirm the trial court's judgment.

## I. Legally Sufficient Evidence Supports Bennett's Conviction

### A. Standard of Review

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found that Bennett committed forgery of a financial instrument beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in

---

[1]TEX. PENAL CODE ANN. § 32.21(d) (West 2011).

2

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williams v. State*, 410 S.W.3d 411, 413 (Tex. App.— Texarkana 2013, no pet.) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge 'sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

A person commits the offense of forgery "if he forges a writing with intent to defraud or harm another." TEX. PENAL CODE ANN. § 32.21(b) (West 2011). To forge means either "(A) to alter, make, complete, execute, or authenticate any writing so that it purports: . . . to be the act of another who did not authorize the act," or "(B) to . . . pass . . . a writing that is forged within the meaning of Paragraph (A)." TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(i), (B) (West 2011). Forgery of a financial instrument, such as a check, is a state jail felony. TEX. PENAL CODE ANN. § 32.21(d).

Here, the State alleged that Bennett committed forgery by passing a financial instrument as proscribed in Section 32.21(a)(B) of the Texas Penal Code. In light of its indictment, the State was required to prove that (1) Bennett (2) passed to Brandy Reynolds, an employee of Tim Drake Jewelers, (3) a check for $475.00 (4) purportedly executed on behalf of SAT Enterprises,

3

Inc. (SAT), which did not authorize the execution of the check (5) with intent to defraud or harm.[2] Bennett challenges only the last element.

## B.    The Evidence

At Bennett's trial, Reynolds, the office manager for Tim Drake Jewelers, testified that Bennett entered the jewelry store March 18, 2013, expressing an intention to purchase wedding rings. Bennett informed Reynolds of his $500.00 budget and picked out two rings and a man's wristwatch that were, collectively, within that price range. Reynolds testified that Bennett first attempted to use a credit card bearing a woman's name to pay for the items. After Reynolds informed Bennett that she could not accept someone else's credit card to pay for the jewelry, Bennett produced his own credit card to Reynolds, but the credit card company declined its use for the purchase. According to Reynolds, Bennett said that "he would write a company check," pulled out an unsigned blank check issued by Bank of America to account holder SAT, and filled out the check in front of her. Reynolds testified that she felt uncomfortable accepting the check, but decided to take it because the $475.00 transaction "wasn't for a whole lot of money." Before Reynolds turned the jewelry and watch over to Bennett, she photocopied his driver's license and wrote his telephone numbers on the check.

With the check in hand, Reynolds drove to the nearest Bank of America branch. Roxanne Hollingsworth, a bank officer for Bank of America, testified that the SAT account had been closed since October 26, 2010, some two and one-half years before the check was written and passed. Upon receipt of this information, Reynolds called the police, informed them about

---

[2]A copy of the allegedly forged check was made a part of the indictment.

the hot check, and provided them with the photocopy of Bennett's driver's license and a description of the jewelry Bennett had taken.

Steve Walden, an officer with the Greenville Police Department, discovered that Bennett was then in jail. At the time of his incarceration, Bennett's personal property was taken from him and placed in a secure area in a locker assigned to Bennett. Upon looking in the locker assigned for the storage of Bennett's personal property on his person at his arrest, Walden located and seized a man's wristwatch and ring. Walden testified that after he informed Bennett of the seizure, Bennett claimed that he had paid cash for those items. Next, Walden asked Bennett's girlfriend, Alicia Tillery (who was visiting Bennett in jail), whether she believed that she was in possession of any stolen property. With teary eyes, Tillery removed a woman's ring from her finger and handed it to Walden. Walden produced the two rings and the wristwatch at Bennett's trial, and they were admitted into evidence. At trial, Reynolds testified that the items seized by Walden were the same items that she gave Bennett in exchange for the hot check. Walden testified that despite his thorough investigation, he could not determine whether SAT was still an ongoing business.

Tillery, who was still in a relationship with Bennett at the time of his trial, admitted that Bennett had no checking account, that he had not worked for SAT, that he had no authority to sign the check on behalf of SAT, and that the signature on the check belonged to Bennett. However, she testified in his favor by attempting to explain how Bennett came to possess SAT's check.

5

According to Tillery, the check was given to Bennett by a man named "Craig," who lived at the same motel where she and Bennett lived. Tillery claimed that Craig approached Bennett, informed him that he was a contract worker, and offered him a job cleaning properties by mowing and scrapping metal. Bennett accepted the job offer. Tillery testified that Craig and Bennett left together in the mornings, worked together for three days, and returned dirty each night. Tillery stated that on the last day of Bennett's employment, Craig handed a blank, unsigned check to Bennett and instructed him to pay himself by executing the check for no more than $500.00.

The State asked Tillery why she failed to previously relay to Walden the story regarding the means by which she alleged that Bennett had come to possess the check. Tillery claimed that even though she was aware that the explanation could help exonerate Bennett, she omitted it because Walden "caught [her] off guard" at the jail. Tillery also claimed that even though Craig was a neighbor, she never confronted him about the dishonored check due to her "very passive" nature. Tillery admitted that even after she had calmed down after Walden's initial interrogation of her wherein he asked about the ring, she never contacted law enforcement in order to set the record straight.

After Tillery's testimony, the State recalled Walden, who testified that after he initially questioned Tillery at the jail, he spoke with her again on March 22, 2013. During that telephone conversation, although Tillery indicated that she and Bennett would meet with Walden to discuss the matter, neither Tillery nor Bennett appeared at the time set for the meeting. According to Walden, Tillery made no mention of Craig during his original interview of her at the jail or in

their subsequent telephone conversation. Walden opined that Bennett was not given permission by anyone to sign the check because (1) it is highly unusual to pay a day laborer with a blank, unsigned check, and (2) he deemed it odd that Bennett made out the check for less than the full $500.00 amount that he said had been authorized by Craig.

After hearing the evidence, the jury found Bennett guilty of forgery of a financial instrument by passing.

## C. Analysis

Bennett argues that the evidence is insufficient to show that he possessed the intent to harm or defraud. However, "[d]irect evidence of the requisite intent is not required"; instead, intent and knowledge may be inferred "'from any facts which tend to prove [their] existence, including the acts, words, and conduct of the accused.'" *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)). "Proof of intent to defraud is also derivative of other elements. In the case of forgery, the culpable mental state requires proof of knowledge that the check is forged." *Wallace v. State*, 813 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1991, no pet.). "If the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred." *Id.*

Here, Reynolds testified that Bennett first attempted to pay for the jewelry with another person's credit card. When that was refused by Reynolds on behalf of the jewelry store, Bennett made an unsuccessful attempt to use his own credit card, but the credit card company refused to approve the transaction. Even though Bennett did not work for SAT and there was no evidence that he was authorized by that company to sign a check on its behalf, he affixed his signature to

7

the check (drawn on a long-ago closed account) and passed it to Reynolds. By doing so, he executed a writing so that it falsely purported to be the act of SAT. As he wrote the check, Bennett told Reynolds that he was writing a company check to pay for the personal jewelry. Tellingly, when Walden informed Bennett that he had seized a wristwatch and a ring from his property locker at the jail, Bennett lied and claimed that he had paid cash for those items. Bennett's attempt at that point to disassociate himself from the dishonored check indicated a consciousness of guilt. Also, when Walden asked Tillery whether she was in possession of any stolen items, she tearfully turned over a ring (that was meant to be her wedding ring) to Walden.

Bennett claims that Tillery's testimony demonstrates that he did not have the intent to harm or defraud. However, although Tillery claimed that her neighbor, Craig, had delivered the blank check to Bennett (with something of a carte blanche authorization to fill it out for any figure up to $500.00), she never thereafter attempted to clear Bennett's name or retrieve her cherished possession by reporting the story to law enforcement before trial. Tillery also failed to confront Craig about the "account closed" check. "Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony." *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The jury, which was in the best position to view Tillery's demeanor, could have determined that she simply concocted her tale about the check in an effort to help Bennett, her boyfriend.

Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Bennett intended to defraud or

harm SAT by executing the check and to defraud or harm the jewelry store by passing the check to pay for merchandise. Accordingly, we overrule Bennett's first point of error.

## II.    Sufficient Evidence Supports the Trial Court's Finding of True to the Enhancement Allegations

Next, Bennett asserts that the State failed to present sufficient evidence to prove the proper sequence of his prior felony convictions used for enhancement purposes under Section 12.425 of the Texas Penal Code, which provides,

> If it is shown on the trial of a state jail felony . . . that the defendant has previously been finally convicted of two felonies other than a state jail felony . . . , and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a felony of the second degree.

TEX. PENAL CODE ANN. 12.425(b) (West Supp. 2014).

In its indictment, the State included the following enhancement allegations:

> And it is further presented in and to said Court that, prior to the commission of the indicted offense, on the 30th day of MAY, 1997 A.D., in cause number F9621781JU in the 291st JUDICIAL DISTRICT COURT of DALLAS County, Texas, the Defendant was convicted of BURGLARY OF A HABITATION and said conviction is a final conviction;

> And it is further presented in and to said Court that, prior to the commission of the indicted offense, on the 10th day of MAY, 2007 A.D., in cause number F0739864I in the CRIMINAL DISTRICT COURT NO. 2 of DALLAS County, Texas, the Defendant was convicted of BURGLARY OF A HABITATION and said conviction is a final conviction.

The trial court's judgment reflects that Bennett entered a plea of true to the State's enhancement allegations, and Bennett does not argue on appeal that the judgment is incorrect with respect to his plea. Instead, he argues (1) that "[t]he state failed to . . . prove that

9

[Bennett's] 2007 conviction was subsequent to his 1997 conviction"[3] and (2) that the State did not prove "that the 1997 conviction had become final before the second alleged offence [sic] occurred."[4]

"Generally, a defendant's true plea to an enhancement paragraph relieves the State of its burden to prove habitual offender status, and the defendant waives any complaint that the evidence is insufficient to support it." *Roberson v. State*, 371 S.W.3d 557, 560 (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 420 S.W.3d 832 (Tex. Crim. App. 2013) (citing *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981)); *see Wilson v. State*, 671 S.W.2d 524, 525–26 (Tex. Crim. App. 1984). "The fact that a defendant entered a plea of 'true,' however, 'must be affirmatively reflected by evidence in the record.'" *Wise v. State*, 394 S.W.3d 594, 598 (Tex. App.—Dallas 2012, no pet.) (quoting *Wilson*, 671 S.W.2d at 526). Where, as in this case, the reporter's record contains no evidence of a plea to the enhancement allegations, a defendant may challenge the sufficiency of the evidence to support the trial court's finding of true to the enhancement allegations. *Id.* at 599–600; *Henry v. State*, 331 S.W.3d 552, 555 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

---

[3]Bennett also complains that the indictment did not allege that the 2007 conviction was subsequent to the 1997. Because he made an objection neither to the substance nor to the form of the indictment, we need not address this complaint. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). "'[I]t is not necessary to allege prior convictions for the purpose of enhancement with the same particularity which must be used in charging on the primary offense.'" *Derichsweiler v. State*, 359 S.W.3d 342, 349 (Tex. App.—Fort Worth 2012, pet. ref'd) (quoting *Williams v. State*, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.]1998, pet. ref'd)). "Nor is it necessary to allege the sequence of the prior convictions." *Id.* "Rather, the notice must enable the accused 'to find the record and make preparation for a trial of the question whether he is the convict named therein.'" *Id.* (quoting *Brown v. State*, 636 S.W.2d 867, 868 (Tex. App.—Fort Worth 1982, no pet.)).

[4]Generally, "'a probated sentence is not a final conviction for enhancement purposes unless it is revoked.'" *Ex parte White*, 211 S.W.3d 316, 319 (Tex. Crim. App. 2007) (quoting *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992)).

Here, the State introduced copies of the judgments of conviction in both the 1997 case and the 2007 case into evidence.[5] The 1997 judgment of conviction reflects that Bennett entered a plea of guilty to the offense of burglary of a habitation and was sentenced to seven years' imprisonment.[6] The 2007 judgment of conviction recited that Bennett pled guilty to the offense of burglary of a habitation pursuant to a plea agreement and that he was sentenced to four years' imprisonment. Thus, the punishment evidence demonstrates that the 1997 and 2007 convictions were final convictions. Since we take notice that the year 1997 (the date of the first conviction) precedes the year 2007 (the date of the second conviction) by a decade and Bennett was sentenced to serve seven years' imprisonment on the first charge, we find that the State proved that the 1997 case antedated the 2007 case. Because we find that sufficient evidence supports the trial court's finding of true to the enhancement allegations, we overrule Bennett's last point of error.

## III. Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted: February 23, 2015
Date Decided: March 12, 2015

Do Not Publish

---

[5]The dates of the convictions show that the 2007 conviction occurred subsequent to the 1997 conviction.

[6]During punishment, Bennett testified that he served this sentence.

11

CHAD Bennett #1993357
TELFORD UNIT
3899 STATE HWY 98
NEW BOSTON TX 75501

LEGAL

COURT OF CRIMINAL App
P.O. BOX 12308
AUSTIN, TX.
78711